IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


**JEANETTE M. ZERBA,**                                 05-CV-1076-BR

        **Plaintiff,**                              OPINION AND ORDER

v.

**JO ANNE B. BARNHART,**
**Commissioner of Social Security,**

        **Defendant.**


**DAVID B. LOWRY**
9900 SW Greenburg Road
Portland, OR 97223
(503) 245-6309

        Attorney for Plaintiff

**KARIN J. IMMERGUT**
United States Attorney
**NEIL J. EVANS**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2904
(503) 727-1000


1  -  OPINION AND ORDER

**MICHAEL McGAUGHRAN**
Office of the General Counsel
**FRANCO L. BECIA**
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900, M/S 901
Seattle, WA 98104-7075
(206) 615-2143

       Attorneys for Defendant

**BROWN, Judge.**

Plaintiff Jeanette M. Zerba seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying her application for disability insurance benefits (DIB) under Title II of the Social Security Act. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c).

Following a thorough and careful review of the record, the Court **AFFIRMS** the Commissioner's decision and **DISMISSES** this matter.

## BACKGROUND

Zerba was born in 1953. She completed high school and subsequently worked as a janitor, seamstress, field merchandiser, craft-store manager, and paper carrier. Tr. 78.[1]

Zerba states she first was bothered by hormonal imbalances

---

[1] Citations to "Tr." refer to the page(s) indicated in the official transcript of record filed with the Commissioner's Answer.

2 -  OPINION AND ORDER

and immune-system dysfunction in 1971.  Tr. 73.  Zerba contends she has been disabled and unable to work because of these impairments since May 1, 1995.  Tr. 15, 105.  Her initial application filed in 1998 was denied in 1999.  Tr. 16, 28, 64. Zerba filed a subsequent application for DIB on October 12, 2002. Tr. 69.  That application was denied, and the Commissioner's decision became final on May 24, 2005, when the Appeals Council denied Zerba's request for review.  Tr. 6, 13, 33.

## DISABILITY ANALYSIS

The Commissioner engages in a five-step sequential process when determining disability under the meaning of the Act.  20 C.F.R. § 404.1520.  *See also Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

If adjudication proceeds beyond Step Three, the Commissioner must evaluate medical and other relevant evidence when assessing the claimant's residual functional capacity (RFC).  The claimant's RFC is an assessment of sustained, work-related activities that the claimant still can perform on a regular and continuing basis despite the limitations of her impairments.  20 C.F.R. §§ 404.1520(e).  *See also* Social Security Ruling (SSR) 96-8p.  The Commissioner uses this information to determine whether the claimant can perform work in the national economy at Step Five.

3  -  OPINION AND ORDER

If the Commissioner reaches Step Five, she must determine whether the claimant is able to do any other work that exists in the national economy. *Yuckert*, 482 U.S. at 141-42. *See also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); 20 C.F.R. § 404.1520(a)(4)(v).

The initial burden to establish functional limitations rests with the claimant. If the process reaches Step Five, however, the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform. *Yuckert*, 482 U.S. at 141-42. *See also Tackett*, 180 F.3d at 1098. The Commissioner may satisfy this burden through the testimony of a vocational expert (VE) or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. Part 404, Subpart P, Appendix 2. If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 404.1566.

Zerba only challenges the Commissioner's evaluation of the evidence and conclusions at Step Five.

## THE ALJ'S FINDINGS

The ALJ found Zerba "not entirely credible" and found her ability to work limited by her obesity, polycystic ovarian syndrome (PCOS), incontinence, and mechanical back problems. Tr. 20, 23. The ALJ assessed Zerba's RFC as follows:

4 -   OPINION AND ORDER

> The claimant has the residual functional capacity to walk 1 block at a time, stand 30 minutes at a time, and sit 2 hours at a time. She can lift 20 pounds occasionally and 10 pounds frequently. She can push and pull 20 pounds for brief periods. She can climb 6 stair steps. Her hearing is generally functional but background noise would interfere with discrimination. She would need restroom breaks 5 times in an 8-hour day. She has a mild impairment in the ability to maintain concentration. She has 80% of the stamina of a typical person her age. She has a 25% limitation in range of motion of the right upper extremity.

Tr. 23.

At Step Five, the ALJ found Zerba's RFC did not preclude all work in the national economy. Relying on the VE's testimony, the ALJ identified four examples of work that Zerba could perform: order-desk sales writer, classified-ad clerk, small-products assembler, and cashier. Tr. 24. Accordingly, the ALJ determined Zerba was not disabled under the Act at any time through the date of his decision. Tr. 24.

## **STANDARDS**

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g). *See also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). The court must weigh "both the evidence that supports and detracts from the

5  -   OPINION AND ORDER

Commissioner's conclusion." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (citing *Martinz v. Heckler*, 807 F.2d. 771, 772 (9th Cir. 1986)). The court "may not substitute its judgement for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Varying interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Magallanes*, 881 F.2d at 750. *See also Batson*, 359 F.3d at 1193.

## DISCUSSION

Zerba contends the ALJ failed to assess her RFC accurately because the ALJ improperly assessed her credibility, improperly rejected her testimony, improperly addressed psychological evidence, and improperly discredited the testimony of a lay witnesses. Zerba also asserts the ALJ solicited inadequate testimony from the VE when the ALJ relied on a disputed RFC assessment.

**1. Zerba's Credibility**

The ALJ based his credibility finding primarily on Zerba's medical-treatment record. Tr. 20. Zerba asserts, however, the ALJ's assessment of Zerba's credibility, in turn, affects the ALJ's interpretation of Zerba's medical record and the statements made by other witnesses.

### a. The ALJ's Credibility Analysis

The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). When determining his credibility findings, the ALJ may consider objective medical evidence and the claimant's treatment history as well as the claimant's daily activities, work record, and the observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). In addition, the ALJ may employ ordinary techniques of credibility evaluation such as weighing inconsistent statements regarding symptoms reported by the claimant. *Id*.

### b. Medical Evidence Supporting the ALJ's Credibility Determination

Zerba twice submitted extensive self-reported medical histories for the record. Tr. 79-81, 254-58, 279-80. Her primary complaints included chronic fatigue and miscellaneous "hormonal imbalances." Tr. 79-81, 254-58, 279-80. She stated her fatigue began "acutely" in 1995, but she subsequently reported she had felt "about the same" for the past twenty years. Tr. 257, 502. The record before this Court, however, does not support the impairments alleged by Zerba; *i.e.,* medical sources repeatedly could not produce clinical findings to substantiate

7  -   OPINION AND ORDER

Zerba's reported symptoms.  Tr. 370, 373, 456, 520-1, 533, 540.

Zerba has a documented history of obesity and extreme deconditioning.  Tr. 364, 488, 495, 575, 390.  She also has mild hypothyroidism and a clinical diagnosis of polycystic ovarian syndrome that is unconfirmed by laboratory testing.  Tr. 495, 553, 578.  Although Zerba was treated prophylactically with Metaforim in September 2002, laboratory testing did not substantiate her reported diabetes.  Tr. 527, 564, 566.  She ceased using Metaforim in November 2002 and reported she felt better without it, but apparently she resumed taking it before the March 2003 hearing.  Tr. 570, 691.

Zerba also testified she has an eye impairment equal to "legal" blindness that affects her ability to function. Tr. 256, 664-67.  Zerba specifically indicated she would be unable to perform several suggested jobs because of this impairment, and she also testified she is frequently "blinded," which results in the necessity for bed rest.  Tr. 281-82, 665. The record does not reflect that any medical source noticed or corroborated this alleged impairment.  Conversely, clinical notes reflect Zerba denied vision disturbances on at least eight occasions.  Tr. 486, 489, 492, 496, 502, 506, 537, 553.

Zerba's presentation of her medical history is inconsistent and unreliable, and, therefore, the ALJ appropriately considered such inconsistencies in his credibility finding.  See *Smolen*, 80

8 -    OPINION AND ORDER

F.3d at 1284.

### c. Other Credibility Considerations

The ALJ may also consider the efforts a claimant has made in procuring treatment. *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999). Zerba correctly asserts poverty is an acceptable reason for failing to seek medical treatment. *See Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995). Zerba regularly consulted a naturopath between June 2001 and March 2002. Tr. 428-54. She also reported she "did not bother" to seek conventional medical care and insinuated to medical providers that she did not accept their opinions. Tr. 80, 512, 531. Zerba repeatedly told allopathic physicians that she preferred naturopathic treatment, and she twice declined conventional clinical exams during scheduled appointments. Tr. 512, 531. Zerba's reliance on naturopaths and chiropractors rather than conventional medical sources appears to be a matter of choice rather than a matter of financial necessity.

Based on this record, the Court finds the ALJ did not err when he found Zerba's testimony not entirely credible because the ALJ provided legally sufficient reasons for doing so. *See Batson*, 359 F.3d at 1193.

### 2. Medical Source Statements

Zerba's medical record begins in 1995 and continues through November 2003. Zerba's present claim concerns the period

9  -    OPINION AND ORDER

beginning October 16, 2002.

**a.   Physical Impairments**

The medical evidence Zerba relies on to establish her alleged fatigue and "hormonal imbalance" impairments was provided primarily by Christina R. Campbell, D.C., N.D., a naturopathic doctor.  Naturopaths are classified as "other" or nonmedical sources.  20 C.F.R. § 404.1514(d).  Zerba apparently reported Dr. Campbell diagnosed her with diabetes and PCOS and prescribed various herbal remedies.  Tr. 553, 555, 564, 570.  Notably, Dr. Campbell explicitly declined to find Zerba disabled and cited the absence of laboratory results as well as Zerba's improved health.  Tr. 391.

Medical staff were unable to confirm Dr. Campbell's reported diagnoses via acceptable medical techniques such as blood tests and imaging studies.  Tr. 459, 483, 524, 539-43.  *See also* 20 C.F.R. § 404.1513(b).  Zerba's blood sugar and thyroid-hormone levels were at or very near normal limits, and spinal-imaging studies showed a normal lumbar spine.  Tr. 373, 399-400, 531, 553, 555, 560.  Other physicians were unable to find any etiology or underlying cause for Zerba's reported pain.  Tr. 498.  Zerba never received a work restriction or a medical-source opinion that suggested she was medically disabled or significantly impaired.

10 -    OPINION AND ORDER

### b. Mental Impairments

Zerba contends the ALJ failed to consider a global assessment of functioning (GAF) submitted by Howard L. Dietch, Ph.D., an examining psychologist. DDS[2] referred Zerba to Dr. Dietch for a psychological assessment. Dr. Dietch found Zerba had minimal depressive symptoms based on testing and suggested her depression was in remission. Tr. 395. Dr. Dietch also assessed Zerba's GAF at 45 based on her reported symptoms without psychometric testing or external corroboration. Tr. 392. Dr. Dietch arrived at Zerba's GAF partially in the context of Zerba being unemployed, but he did not indicate his assessment precludes Zerba from working. Tr. 395. In fact, in his assessment, Dr. Dietch pointed out stressors of unemployment, fatigue, and the poor health of Zerba's husband in his GAF assessment. Tr. 19. The ALJ also found Dr. Dietch's GAF was consistent with the opinions of reviewing physicians. Moreover, the ALJ appeared to give Dr. Dietch's GAF significant weight. Tr. 18-19.

Accordingly, the Court finds the ALJ did not err in the weight he gave to Dr. Dietch's GAF assessment when the ALJ was determining Zerba's RFC. *See Magallanes*, 881 F.2d at 750.

---

[2] DDS is a federally funded state agency that makes eligibility determinations on behalf and under the supervision of the Social Security Administration pursuant to 42 U.S.C. § 421(a) and 20 C.F.R. § 416.903.

11 -   OPINION AND ORDER

### 3.   Lay-Witness Testimony

Zerba contends the ALJ improperly rejected the written statements of a lay witness.

The ALJ has a duty to consider the testimony of lay witnesses.  20 C.F.R. §§ 416.913(d)(4); 416.945(a)(3).  *See also Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).  Friends and family members in a position to observe the claimant's symptoms and daily activities are competent to testify regarding the claimant's condition.  *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).  The value of lay-witness testimony rests in their eyewitness observations, which may "often tell whether someone is suffering or merely malingering."  *Dodrill*, 12 F.3d at 918.  The ALJ may not reject such testimony without comment, but he may reject lay testimony that is inconsistent with medical evidence.  *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).  *See also Lewis*, 236 F.3d at 512.  If he rejects lay-witness testimony entirely, he must give reasons germane to the witness.  *Nguyen*, 100 F.3d at 1467.

Zerba's husband, David Zerba, submitted a written statement regarding Zerba's pain and restricted daily activities.  Tr.343-50.  David Zerba reported his wife "gets behind in the housework" due to her medical conditions and requires rest after walking twenty-five feet.  Tr. 344, 348.  He also stated Zerba has difficulty maintaining a work pace "because she is a

12 -   OPINION AND ORDER

perfectionist."  Tr. 345.

The ALJ must consider lay testimony when evaluating a claimant's symptoms, but lay testimony alone cannot establish a medical diagnosis.  *Lewis*, 236 F.3d at 511-12.  As noted, the ALJ may reject lay testimony inconsistent with the medical record.  *Id.*  David Zerba's observations are consistent with Zerba's documented deconditioning, but his observations are not supported by medical evidence regarding diabetes or polycystic ovarian syndrome.  In addition, David Zerba's observations do not establish Zerba's behavior is medically necessary rather than self-limiting.

Although the ALJ should have given a germane reason for discounting David Zerba's testimony, this error is harmless because that testimony is inconsistent with the medical evidence.  *See Nguyen*, 100 F.3d at 1467.  *See also Lewis*, 236 F.3d at 512.

The record specifically indicates Zerba's physicians suspected polycystic ovarian syndrome, which was clinically diagnosed but unconfirmed by blood tests.  Tr. 553, 570.  The record also affirmatively reflects Zerba did not have chronic fatigue syndrome, diabetes, or a significant thyroid disorder.  Tr. 486, 489, 492, 496, 502, 506, 537, 553.  Moreover, Zerba never received a medical diagnosis that would account for her reported pain.

In summary, the Court finds the record supports the ALJ's

13 -   OPINION AND ORDER

finding that Zerba is not entirely credible and that her reports of fatigue and pain are exaggerated, largely unsubstantiated, and without dispositive effect on her ability to work. In addition, Zerba failed to show the ALJ's RFC assessment was erroneous. Moreover, the ALJ appropriately included all limitations identified in Zerba's RFC assessment in his hypothetical questions to the VE.

Accordingly, the Court concludes the Commissioner's decision that Zerba is not disabled and is not entitled to benefits under Title II of the Social Security Act is based on correct legal standards and supported by substantial evidence in the record.

## CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision and **DISMISSES** this matter.

IT IS SO ORDERED.

DATED this 9th day of May, 2006.

/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge

14 -    OPINION AND ORDER